451 P.2d 333

STATE of Arizona, Appellee,

v.

James Edward CUMBO, Appellant.

No. I CA–CR 179.

Court of Appeals of Arizona.

March 4, 1969.

254

Gary K. Nelson, Atty. Gen., by Thomas M. Tuggle, Asst. Atty. Gen., for appellee.

James L. Corbet, Phoenix, for appellant.

DONOFRIO, Chief Judge.

On March 6, 1962, the defendant, James Edward Cumbo, stopped along a highway northwest of Phoenix and struck up a conversation with a sheepherder, Sebastian Jaureguiverry. The sheepherder was unable to speak English with any competency and so advised the defendant in broken English and gestures. Cumbo offered Mr. Jaureguiverry a drink of wine, which he declined. The defendant then became angry, either because he did not believe the sheepherder could not speak English, or because the sheepherder refused to have a drink with him. Thereupon the offense in question occurred wherein defendant struck the sheepherder on the head with a gun.

On the 16th day of October, 1962, James Cumbo was found guilty of assault with a deadly weapon, a felony, and was sentenced to serve a term of not less than eight, nor more than ten years in the Arizona State Prison. At no time during his trial was defendant present. Defendant's counsel stipulated that the trial should continue in defendant's absence. At the motion for new trial and at the sentencing Cumbo was present, but made no contention that he was

involuntarily absent from the trial. On November 29, 1962, counsel filed a notice of appeal alleging that defendant was not voluntarily absent from the trial and counsel could not waive his right to be present. A writ of habeas corpus was filed on December 20, 1962, alleging, as in the notice of appeal, that he had not voluntarily absented himself from the trial. The Superior Court granted the writ and ordered defendant discharged on May 22, 1963.

The appeal from the judgment of conviction was considered and affirmed by our State Supreme Court on November 29, 1963. State v. Cumbo, 96 Ariz. 385, 396 P.2d 11 (1964). Then, in September 1965, our State Supreme Court vacated the habeas corpus order, holding that the Superior Court did not have jurisdiction of habeas corpus proceedings where appeal from the judgment of conviction was pending before the Supreme Court and the same issues were raised on appeal. In a footnote that same decision precluded the defendant from filing a new petition raising the same issues upon the theory that the holding in the case was not applicable because the appeal had been concluded. Eyman v. Cumbo, 99 Ariz. 8, 405 P.2d 889 (1965).

Subsequent to this, defendant filed a writ of habeas corpus with the United States District Court in Phoenix, Arizona. The final determination of that proceeding is not present in the record presented to this Court for review. At oral argument both the State and counsel for defendant stated for the record that the judgment of conviction on September 24, 1962, was set aside on the grounds that defendant was not voluntarily absent from the trial, and with instructions that the State might retry Cumbo. Since the State retried Cumbo, it is our opinion that the State accepted the order of the United States District Court.

On June 5, 1967, James Cumbo was again tried for assault with a deadly weapon, and on June 6, 1967, he was found guilty. Since the time of the preliminary examination the victim, Sebastian Jaureguiverry, had died. At this second trial, over objections of de-

fense counsel, the court permitted a reading of the testimony of the victim from the transcript of the first trial.

At the former trial the defendant had been identified by the victim by means of two photographs, one being full face of the defendant, and the other a profile shot. These photographs were again introduced and admitted into evidence at the second trial. From what we can gather, the photographs were the pictures ordinarily taken at the time of arrest and had the usual identifying numbers below them. Tape was placed over the numbers on the pictures and there was no evidence that the jurors lifted the tape or knew of the numbers. The defendant did not testify on his own behalf at the trial.

On appeal two questions are presented. First, was it reversible error for the trial court to admit in evidence a "mug shot" of the accused when the defendant did not testify on his own behalf? Second, was it reversible error for the court to allow the trial transcript to be read to the jury when the testimony being read was taken from a trial at which the accused had been deprived of his right to be present at his own trial, and his right to confront the witnesses against him?

## ADMISSIBILITY OF PHOTOGRAPHS

Defendant complains of the admission of the exhibit which shows two photographs, one being the full face of the defendant, and the other a profile shot, which photographs included numbers below them. These photographs or "mug shots", as defendant's counsel refers to them in his brief, may have been taken at the time of defendant's arrest, but this fact was not made known to the jury. In order to diminish the possibility that the jury might think these were pictures taken as a result of a previous conviction, tape was used to cover the numbers.

The exhibit in question was not transmitted to us by the Clerk of the Superior Court. Pursuant to Rule 75(h) (2), Rules of Civil

Procedure, 16 A.R.S., we requested the Clerk of the Superior Court to supply the exhibit to this Court. We have been informed that he is unable to locate it. Inasmuch as we do not have the photograph and are reversing on other grounds, we will therefore only generally touch upon the issue.

■■■ It is the law in this state that the prosecution may not offer evidence of other criminal acts or convictions where such evidence is unrelated to the crime for which the defendant is being tried. There are exceptions to this rule, but none of them is urged or applicable in this case. Udall, Arizona Law of Evid. § 115. The suggestion of a criminal record has been held to be error, and reference to the term "mug shot" of defendant prejudicially implies a previous criminal record. State v. Jacobs, 94 Ariz. 211, 382 P.2d 683 (1963); see also Barnes v. United States, 124 U.S.App.D.C. 318, 365 F.2d 509 (1966); People v. Murdock, 39 Ill.2d 553, 237 N.E.2d 442 (1968). In Barnes the court stated:

"It is well-settled law that the criminal record of a defendant may not be introduced into evidence at trial unless the defendant takes the stand or otherwise places his character in issue. A photograph which on its face reveals the existence of such a criminal record is likewise inadmissible when the defendant's character has not been placed in issue.

"Some courts have held that such pictures may be introduced into evidence where the nature of the photograph is effectively kept from the jury's knowledge. Thus, in a recent Texas decision, the court upheld the admission of a police picture of the defendant where 'all identification marks were removed, and, as far as the jury were able to determine, it might have been taken in a penny arcade.' No such reasoning can justify Government Exhibit 3 in this case. The double-shot picture, with front and profile shots alongside each other, is so familiar from 'wanted' posters in the post office, motion pictures and televi-

sion, that the inference that the person involved has a criminal record, or has at least been in trouble with the police, is natural, perhaps automatic. The rudimentary tape cover placed over the prison numbers on the photograph, and over the notations on the reverse side, neither disguised the nature of the picture nor avoided the prejudice. If anything, by emphasizing that something was being hidden, the steps taken here to disguise the nature of the picture may well have heightened the importance of the picture and the prejudice in the minds of the jury."
365 F.2d 509, at pages 510, 511.

■■■ It is this Court's opinion that the double-shot picture with front and profile alongside each other, unless disguised so as not to appear to be a "mug shot", and absent an explanation that the picture was taken at defendant's arrest on the charge involved, intimates to the jury that defendant had a prior criminal record.

## RIGHT OF CROSS-EXAMINATION AND CONFRONTATION

■■■ It is by now accepted constitutional law that the Sixth Amendment-right of an accused to confront the witnesses against him is a fundamental right made obligatory on the states by the Fourteenth Amendment. Pointer v. Tex., 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965); Smith v. Ill., 390 U.S. 129, 88 S.Ct. 748, 19 L.Ed. 2d 956 (1968). Even before this basic concept was espoused by the United States Supreme Court, the founders of this State saw fit to include this basic right in the Arizona Constitution, and our State Supreme Court included this fundamental safeguard in their Rules of Criminal Procedure. Art. 2, Sec. 24, Arizona Constitution, A.R.S., Rule 231, Arizona Rules of Criminal Procedure, 17 A.R.S. The underlying purpose for this right was pointed out by the United States Supreme Court:

" 'The primary object of the [Confrontation Clause of the Sixth Amendment] * * * was to prevent depositions or

*ex parte* affidavits * * * being used against the prisoner in lieu of personal examination and cross-examination of the witness, in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witnesses, but of compelling him to stand face to face with the jury in order that they may look at him and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief.' "

Barber v. Page, 390 U.S. 719, 88 S.Ct. 1318, 1320, 20 L.Ed.2d 255 (1968), quoting from Mattox v. United States, 156 U.S. 237, 242, 243, 15 S.Ct. 337, 39 L.Ed. 409 (1895).

In the circumstances of the instant case, the defendant was unable to have the accusing witness "stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief."

■ A person may waive his constitutional rights if he does so knowingly, intelligently, and voluntarily. Davis v. Dunbar, 9 Cir., 394 F.2d 754 (1968); State v. Horn, 9 Ariz.App. 81, 449 P.2d 317 (1969). However, in the instant case, under the ruling of the United States District Court, there could be no voluntary waiver of the constitutional rights involved. The judgment of the District Court which found that the defendant was not voluntarily absent became the law of the case for the purpose of considering the admissibility of the evidence. It did not, however, preclude the rearresting, rearraigning, and retrying of the defendant for the same crime. United States v. Case, 283 F.Supp. 744 (1968); State v. Abbott, 103 Ariz. 336, 442 P.2d 80 (1968).

■ On review of a criminal judgment of a state court by habeas corpus, the United States District Courts have the power only to correct errors in the judgment in the state court by releasing the defendant if a violation of a federally protected right has occurred. It cannot revise the state court's decision; it can only act on the body of the petitioner. Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). Once a federal court upholds a collateral attack on a judgment of conviction following a defendant's first state trial, the decision of the federal court becomes the law of the case. Further proceedings in any later trial based upon the same facts must be in conformity with the habeas corpus decision. Binkiewicz v. Scafati, 281 F. Supp. 233 (1968); Wells v. Sheriff, Carter County, 442 P.2d 535 (Okl.Cr.1968); Whitree v. State, 56 Misc.2d 693, 290 N.Y. S.2d 486 (1968). In the case before this Court the previous habeas corpus proceedings are res judicata on the issue of the lack of the voluntariness of defendant's absence in his previous State trial.

■ Appellee cites many cases, including State v. Head, 91 Ariz. 246, 371 P.2d 599 (1962) and Coffman v. State, 81 Nev. 521, 407 P.2d 168 (1965), which follow the rule that testimony at a preliminary hearing or deposition may be introduced at a trial where the defendant had the right to cross-examine at the time the testimony was elicited. In dicta from a recent case, Barber v. Page, supra, the constitutionality of the rule was questioned by the United States Supreme Court. We need not go into that rule in this case, as we do not feel that it is applicable. We are not dealing with the testimony given at the preliminary hearing. The testimony introduced herein was from the first trial where defendant was not present when tried and was not voluntarily absent. To suggest that failure to cross-examine the witness at the preliminary examination constitutes a waiver to confront and cross-examine the witness at a later trial where the witness is not present and the testimony introduced is not the preliminary examination testimony, but the testimony from a previous trial where the defendant was involuntarily absent, hardly comports with the United States Supreme Court definition of waiver as "an intentional relinquishment or abandonment of a known right or privilege."

Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938); Brookhart v. Janis, 384 U.S. 1, 4, 86 S.Ct. 1245, 16 L.Ed.2d 314 (1966).

It is because defendant was precluded from exercising his rights guaranteed in the Sixth Amendment and the Fourteenth Amendment of the United States Constitution, Art. 2, Sec. 24 of the Arizona Constitution, and Rule 231 of the Arizona Rules of Criminal Procedure, that we reverse the judgment.

Reversed and remanded for proceedings not inconsistent with this opinion.

STEVENS and CAMERON, JJ., concur.