468 P.2d 598

The STATE of Arizona, Appellee,

v.

William Herbert HALL, Appellant.

No. 1 CA–CR 188.

Court of Appeals of Arizona, Division 1.

May 5, 1970.

Rehearing Denied June 11, 1970.

148

Gary K. Nelson, Atty. Gen., by Carl Waag, Asst. Atty. Gen., Phoenix, for appellee.

Herbert B. Finn and Peter VanBaalen, Phoenix, for appellant.

HOWARD, Chief Judge.

The defendant is a second-hand dealer whose principal business is the buying and selling of used and new hubcaps. He was convicted by a jury of three counts of receiving eighty-four hubcaps, all in violation of A.R.S. § 13–621.

Verdugo and Way, two of the persons who stole and sold to the defendant the

hubcaps in question, testified at the trial in person. The testimony of Heath, the brother-in-law of Way, was introduced into evidence by means of his testimony at the preliminary hearing

Defendant's knowledge of the stolen character of the hubcaps was shown by several means. Both Verdugo and Way testified that on prior occasions they sold numerous stolen hubcaps to the defendant. Verdugo on one occasion made a sale to the defendant, in the morning, of several stolen hubcaps and returned in the afternoon to defendant's establishment with more purloined hubcaps. Although both Verdugo and Way testified under cross-examination that they did not specifically tell the defendant that the hubcaps were stolen, they both testified that the defendant indicated to them that he knew they were in fact stolen. Testimony was also elicited from the defendant that since he was charged with the crimes his business in used hubcaps has declined.

Officer Brunet of the Phoenix Police Department, a witness for the State, testified that he first went to the defendant's place of business when he received a report from an assistant city attorney that his stolen hubcaps were at the defendant's place of business. While he was there investigating the theft of the hubcaps, and, without any "Miranda" warning, he said to the defendant, "Mr. Hall isn't it quite obvious to you that when these boys keep coming in here day after day with large amounts of hubcaps that these hubcaps must be stolen? Why do you buy them?" Over defendant's objection the officer testified that the defendant's comment to this was, "Well if I don't buy them Mr. Clayworth will." Mr. Clayworth was defendant's competitor in the used hubcap business.)

The main defense offered by the defendant at the trial was the fact that he did not know that the hubcaps were in fact stolen.

He testified that he thought that the hubcaps he was buying from Mr. Verdugo, Mr. Heath and Mr. Way were purchased at various wrecking lots around the City of Phoenix and California. He further testified that he does business with some regular hubcap sellers who comb the highways for hubcaps. To counter this testimony, the State elicited evidence that a great many of the hubcaps that were being sold by Verdugo, Heath and Way were "magnesium" hubcaps, spinners and wire wheels, and that such hubcaps were usually not found in wrecking yards or along the highways.

The defendant contends that the court erred in the following respects:

(1) By allowing the State to read into evidence the testimony of the defendant given at the preliminary hearing;

(2) By allowing the police officer to testify as to statements made by the defendant without a showing that a "Miranda" type warning was given;

(3) By allowing the State to ask the defendant whether or not his business volume in used hubcaps fell off after the charges were made against him; and

(4) By permitting the testimony of the absent witness, Heath, to be read into evidence.

## THE MIRANDA WARNING

The essence of the warnings required by Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), is "custodial interrogation." This does not mean, however, that the *Miranda* warnings are required only before the interrogation of an arrested suspect at the police station. It applies where he has been "deprived of his freedom of action in any significant way." In Orozco v. Texas, 394 U.S. 324, 89 S.Ct. 1095, 22 L.Ed. 2d 311 (1969), where four officers entered defendant's bedroom and began to question him and where from the moment he gave his name, he was not free to go, but was under arrest, it was held that the *Miranda* warnings were required. Where, however, the suspect is free to come or go as he pleases, the *Miranda* warnings are not required. State v. Sherron, 105 Ariz. 277,

463 P.2d 533 (1970). In State v. Hunt, 8 Ariz.App. 514, 447 P.2d 896 (1968), we stressed the fact that the interrogation must be "custodial interrogation." This means questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. There is no evidence in this case which suggests that at the time the statements were made by Officer Brunet to the defendant that his freedom of movement was deprived in any way whatsoever or that he was in custody. As a matter of fact, he was not arrested until several days after the statement by Brunet was made. It may be that Officer Brunet at the time he asked the question believed that the defendant was dealing in stolen goods. However, there were no actions on the part of Officer Brunet that would make the defendant feel that he was in custody or that would make him feel under any kind of compulsion. The mere presence of a police officer does not remove the defendant's ability to voluntarily reach a decision regardless of what may have been going on in the officer's mind. State v. Sherron, supra. We believe the evidence clearly shows that defendant's reply to the statement by Officer Brunet is not within the *Miranda* rule.

### ADMISSION OF DEFENDANT'S TESTIMONY AT PRELIMINARY HEARING

Portions of defendant's testimony at the preliminary hearing were read into evidence over defendant's objection.

The defendant contends that Rule 30 of the Arizona Rules of Criminal Procedure, 17 A.R.S., requires his testimony at the preliminary hearing to be signed by him before it is admissible in evidence. This Rule provides:

"A. If the defendant testified, his testimony, if signed by him, shall be admissible in evidence against him at the trial without further authentication. Nothing contained in this Rule shall prevent the state from giving in evidence at the trial any admission, confession or other statement of the defendant made at any time which by law is admissible as evidence against such person."

■ Contrary to defendant's contentions this Rule does not require that the transcript of the preliminary hearing taken by a certified court reporter and certified by him, as was done in this case, need be signed by the defendant to be admissible. It merely provides that there need be no authentication of the testimony if the defendant signed it. The second sentence of the Rule clearly permits testimony to be read into evidence subject to the usual rules as to the admissibility of evidence. There is no contention by the defendant that his testimony was not freely and voluntarily given and defendant has not suggested to us any other reason for his testimony being inadmissible.

### DECREASE IN BUSINESS

Defendant contends that the testimony elicited from him as to the decrease in his used hubcap business after the charges were brought was error. The State contends that the evidence was admissible in order to show the requisite knowledge on the part of the defendant that the hubcaps purchased by him in the instant case were stolen. Although it would appear that the questioned evidence is an inference upon an inference, the correct test is laid down in the case of State v. Evans, 88 Ariz. 364, 356 P.2d 1106 (1960). That test is whether the testimony renders the desired inference more probable quoting with approval from United States v. Pugliese, 153 F.2d 497, 500 (2d Cir. 1945), the court in *Evans* stated:

"'Its relevancy did not, and indeed could not, demand that it be conclusive; most convictions result from the cumulation of bits of proof which, taken singly, would not be enough in the mind of a fair minded person. All that is necessary, and all that is possible, is that each bit may have enough rational connection with the issue to be considered a factor contributing to an answer.'"

The court in *Evans* also reaffirmed its position taken in State v. Thomas, 78 Ariz. 52, 275 P.2d 408 (1954), wherein the court stated that the objection of remoteness goes to the weight of the evidence rather than to its admissibility and that to exclude evidence merely because it tends to establish the possibility rather than a probability would produce curious results not heretofore envisioned.

■ The ultimate issue upon which the testimony was admitted was the knowledge of the defendant as to the character of the goods in question. We believe that the testimony as to the decrease in his used hubcap business after the charges were brought, rationally bears upon the issue of knowledge. The fact that an innocent interpretation of this evidence can also be made does not warrant its exclusion.

The defendant contends that the case of State v. Hughes, 102 Ariz. 118, 426 P.2d 386 (1967), prohibits the admission of this evidence and also the evidence relating to prior sales of stolen hubcaps by Way and Verdugo to the defendant. We do not agree. We do not read the *Hughes* case as requiring the State to prove all inferences from the evidence beyond a reasonable doubt.

■ Although the rule is that evidence of offenses other than and independent of the offense with which the accused is charged and for which he is being tried is not admissible, there are exceptions to the general rule. One of these exceptions is that of proof of knowledge. This exception is especially applicable to the offense of receiving stolen property since guilty knowledge is the gist or substance of the offense. State v. Lindsey, 81 N.M. 173, 464 P.2d 903 (1969)

## ADMISSIBILITY OF TESTIMONY OF ABSENT WITNESS

The defendant contends that the court erred when it allowed the testimony taken at the preliminary hearing of the witness, Leland Heath, to be read into evidence without a showing of any effort to secure the attendance of this witness. The defendant was represented by counsel at the preliminary hearing but he did not cross-examine Heath. In Barber v. Page, 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968), the United States Supreme Court held that a witness is not "unavailable" for purposes of an exception to the confrontation requirement of the Sixth Amendment unless the prosecutorial authorities have made a good-faith effort to obtain his presence at the trial. There was no showing in the case at bar that the State made any effort whatsoever to secure the presence of this witness. Barber v. Page, supra, also makes it clear that the court would reach the same conclusion even if the defendant's attorney actually cross-examines the witness at the preliminary hearing. The court reasoned:

> " * * * The right to confrontation is basically a trial right. It includes both the opportunity to cross-examine and the occasion for the jury to weigh the demeanor of the witness. A preliminary hearing is ordinarily a much less searching exploration into the merits of a case than a trial, simply because its function is the more limited one of determining whether probable cause exists to hold the accused for trial. While there may be some justification for holding that the opportunity for cross-examination of a witness at a preliminary hearing satisfies the demand of the confrontation clause where the witness is shown to be actually unavailable, this is not, as we have pointed out, such a case."

Barber v. Page, supra, had already been decided at the time of the trial of this case and is controlling, although we parenthetically note that in Berger v. California, 393 U.S. 314, 89 S.Ct. 540, 21 L.Ed.2d 508 (1969), the rule was held to be retroactive.

■ Count Two of the information charged the defendant with receiving the stolen goods from the absent witness, Leland Heath. Although we have no hesitancy in reversing count two on the basis of Barber v. Page, supra, we have to resolve

the issue as to whether or not the admission of Heath's testimony also requires a reversal as to counts one and three. Article 6, § 27 of the Arizona Constitution, A.R.S. provides in part that no cause shall be reversed for technical error in pleadings or proceedings when upon the whole case it shall appear that substantial justice has been done. This is a so-called "harmless error" provision which prohibits reversal if the error committed is harmless. The test as to harmless error is set forth in the case of Chapman v. State of California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), wherein the court put the beneficiary of a constitutional error to the burden of proving beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained. In *Chapman* the court made it quite clear that they were not holding that all federal constitutional errors, regardless of the facts and the circumstances, must always be deemed harmful. In searching for a further clarification of the *Chapman* test of "harmless beyond a reasonable doubt," it is evidence that the test of whether or not there was sufficient evidence to convict is not appropriate. Anderson v. Nelson, 390 U.S. 523, 88 S.Ct. 1133, 20 L.Ed.2d 81 (1968).

A guide to "beyond a reasonable doubt" can be found in the recent United States Supreme Court decision in Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969). There the petitioner, Harrington, a Caucasian, was tried with three other defendants, Bosby, Roan and Cooper, all Negroes, in the State trial for attempted robbery and first degree murder. All four were tried together over an objection by Harrington that his trial should be separate. Each of the three co-defendants had made prior confessions and these confessions were introduced at the trial with limiting instructions.

In the majority opinion Justice Douglas concluded that the violation of the rule in Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968) was harmless beyond a reasonable doubt. In so holding, he pointed out that Harrington had already made statements introduced in evidence which placed him at the scene of the crime. He had admitted that Bosby was the triggerman, that he fled with the other three and that after the murder he dyed his hair black and shaved off a mustache. Several eyewitnesses placed Harrington at the scene of the crime and Roan's confession placed Harrington inside the store with a gun at the time of the attempted robbery and murder. Both Bosby's and Cooper's confessions which were admitted in evidence did nothing more than place Harrington at the scene of the crime. The majority opinion emphasized that Harrington himself agreed that he was there and that the evidence of Cooper and Bosby was merely cumulative. The court held, in essence, that there comes a time when the evidence is *so overwhelming* that a violation of Constitutional guarantees can become harmless error. The court made it clear that it was not departing from the standards in *Chapman,* contrary to the dissenting opinions when it stated:

"We do not depart from *Chapman*; nor do we dilute it by inference. We reaffirm it. We do not suggest that if evidence bearing on all the ingredients of the crime is tendered, the use of cumulative evidence, though tainted, is harmless error. Our decision is based on the evidence in this record. The case against Harrington was not woven from circumstantial evidence. It is so overwhelming that unless we say that no violation of *Bruton* can constitute harmless error, we must leave this state conviction undisturbed."

The court also indicated the point of view from which the court must consider "reasonable doubt" when it stated:

"It is argued that we must reverse if we can imagine a single juror whose mind might have been made up because of Cooper's and Bosby's confessions and who otherwise would have remained in doubt and unconvinced. We of course do not know the jurors who sat. Our judgment must be based on our own reading of the record and on what seems

to us to have been the probable impact of the two confessions on the minds of an average jury * * *."

Turning our attention to the evidence in this case, we find that the defendant testified that Heath, Way and Verdugo told him that they had purchased the hubcaps from auto wrecking yards. He further testified that, as to some of the hubcaps he had purchased from Way and Heath, they had informed him that they had gotten the hubcaps by means of trading in an old automobile to the auto wrecker. Defendant denied making any statements concerning his knowledge of the hubcaps being stolen. The defendant further testified that he did not make the statement attributed to him by Officer Brunet. The only direct testimony tending to show that the defendant knew the hubcaps were stolen came from Verdugo, Heath and Way, none of whom were charged by the police with the theft of the hubcaps. The evidence further showed that the defendant required all persons, including Heath, Way and Verdugo to fill out and sign Second Hand Dealer Reports. These reports were provided by the police department and required complete data on each sale, including a physical description of the person selling the articles to the dealer and his license number. A reasonable jury might very well have also found it inconsistent that a man buying stolen goods would have the thief fill out and sign the Second Hand Dealer's Report. It is obvious from the multiple charges and the testimony in the case that the State was relying heavily on the conduct of all three witnesses, Heath, Verdugo and Way, to show knowledge on the part of the defendant. We must answer the same question that the court asked in Harrington: What was the probable impact of the admission of Heath's testimony on the minds of an average jury? It appears to us that the testimony of Heath was just one more "nail in the coffin". As to the issue of guilty knowledge, the testimony as to each count was relied upon by the State to support the charge in the other counts. We believe that counts one and three are tainted with the inadmissible testimony of Heath and that the error of admitting the testimony of Heath is not harmless beyond a reasonable doubt.

For the foregoing reasons the judgment is reversed as to all counts in the information and the case is remanded for a new trial.

KRUCKER, and HATHAWAY, JJ., concur.

NOTE: This cause was decided by the Judges of Division Two pursuant to A.R.S. § 12–120, subsec. E.