OPINION
JACOBSON, Chief Judge.
The major issues in this appeal deal with whether the trial court properly ascertained that a paid police informer used in connection with a police-sponsored “sting operation” could invoke his privilege against self incrimination and if properly invoked, what are the effects of that invocation on defendant’s due process rights.
The defendant, Ruben Cornejo, and a co-defendant, Donald Downing, were each charged with two counts of trafficking in stolen property (in the case of each defendant, each count was a separate indictment) arising out of the sale by the defendants of a 1975 Ford van and three rifles to a “fence” which in actuality was an undercover police operation to purchase stolen property. The matter was tried to a jury which found the defendant guilty on both counts, and upon admission of three prior felony convictions, the defendant was sentenced to the enhanced presumptive sentence of 11.25 years incarceration on each charge, to be served concurrently. The defendant has appealed.
The facts established at trial are that the Phoenix Police Department in the latter part of 1980, established an undercover fencing operation to purchase stolen property. The operation was conducted out of a residential home in Phoenix, Arizona, and all transactions involving the sale of property were secretly filmed on video tape by *206 police personnel. It appears that the police utilized either paid informants or undercover officers as “scouts” to direct “customers” to the operation.
On the evening of November 10, 1980, the defendant and his co-defendant Downing, went to the house utilized by the police in their undercover operation and there negotiated the sale of a 1975 Ford van for $300 and three rifles for $200. The van had been stolen earlier that evening from a shopping center and the rifles had been stolen earlier that day from the home of Eugene John Munger. This entire sale transaction was captured on video tape.
The defendant took the stand and denied either knowing or suspecting that the rifles or the van were stolen. He testified that he was selling the guns at the request of his friend Joaquin “Jake” Lares, and that Lares had pre-arranged the sale. His testimony continued that his sole involvement in the transaction was to accompany Downing to the sale because Lares did not trust Downing to return with his money for his rifles. He further stated that he was unaware that the van was to be sold or that it belonged to Lares until shortly before he arrived at the house.
The defense presented testimony through police detective Buckner, a “scout”, that Lares had previously worked for the police department as a paid informer; that Lares had been used in the sting operation to direct people to the fencing scheme; that Lares was paid the sum of $50 for every person directed to the fencing house; that Lares was paid in connection with the defendant’s sale of the van and gun; and that during the course of this particular police-operated scheme Lares had been paid the sum of approximately $1175.
The defense also established through a witness to the gun theft who saw the thief, that the thief was not the defendant, but did resemble Lares.
Based upon this background, the defendant subpoenaed Lares to testify at trial in an attempt to establish that the defendant was unaware that the property was stolen; that Lares furnished it to him; and that Lares was playing both ends against the middle by stealing the property and then being paid by the police for turning it in.
In answer to the subpoena, Lares appeared with counsel who advised the court and the defendant that he would refuse to testify under an assertion of his fifth amendment privilege against self incrimination. Therefore an in-camera proceeding was held at which time the trial court, through questioning of Lares’ attorney, determined that Lares was incarcerated on charges of armed robbery and burglary which did not relate to the defendant’s charges. Lares’ attorney stated that he had discussed the facts of the case with both the attorney for the state and the defense counsel, that he had determined that questions the defendant sought to have answered would incriminate his client, and he had advised his client that he was justified in asserting his fifth amendment privilege on every aspect of the case before the court, including even knowing the defendant. The defense attorney and the prosecutor were permitted to question Mr. Lares but he asserted his fifth amendment privilege as to any questions relating to the defendant or the events of November 10, 1980 regarding the sale of the van and the guns. The trial court upheld the right of Lares to invoke his fifth amendment privilege and the court excused Lares as a witness.
While the defendant took the stand, he refused to admit all the elements of the substantive charge against him, that is, that he knew that the property was stolen. Therefore the trial court refused the defendant’s requested instruction on entrapment. This is in conformity with existing Arizona laws. State v. McKinney, 108 Ariz. 436, 501 P.2d 378 (1972).
The first issue raised on appeal is whether the defendant was denied his right to present a defense through Lares because the trial judge improperly upheld Lares’ right to invoke his privilege against self incrimination, relying primarily upon United States v. Melchor Moreno, 536 F.2d *207 1042 (5th Cir.1976). In Moreno, the court was faced with the ever-occurring problem of determining whether a witness can properly invoke his fifth amendment right against self-incrimination. On the one hand is the danger of simply allowing a witness to invoke the privilege willy-nilly under circumstances where the risk of self incrimination is remote and thus thwart the judicial process, or, on the other hand, requiring the claim of privilege to be proven to such a degree, that the witness would be “compelled to surrender the very protection which the privilege is designed to guarantee.” Hoffman v. United States, 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118, 1124 (1951). The court resolved this dilemma by approving the practice whereby:
outside the presence of the jury, the witness will allude in very general, circumstantial terms to the reasons why he feels he might be incriminated by answering a given question. The judge examines him only far enough to determine whether there is a reasonable ground to apprehend danger to the witness from his being compelled to answer. If the danger might exist, the court must uphold the privilege without requiring the witness to demonstrate that a response would incriminate him, the latter inquiry being barred by the privilege itself.
536 F.2d at 1046.
We, likewise, approve of this procedure, and the trial court properly utilized that procedure here. The trial court, outside the presence of the jury, conducted an examination of Lares concerning his right to take the fifth amendment. While the defendant claims that the trial judge should have pursued “sufficient questioning to determine if Lares could have testified to enough details of his alleged role in the ‘sting’ operation, and his employment as a police agent to confirm the defendant’s allegations to the jury, while still allowing the necessary refusals to answer incriminating questions”, he does not suggest how this could have been accomplished. Through previous trial testimony, the trial judge was aware that the property had been stolen on the same date that the defendant sold it to the officers and allegedly received it from Lares. The court was also aware that the victim’s wife was present at the home where the guns were stolen, and had seen the intruder. She could not identify the defendant as the intruder but gave a description which generally met that of Lares. Under these circumstances, it was clear that any question of Lares’ relationship with the defendant or the events of November 10, 1980 created a substantial danger that Lares might incriminate himself in the theft of the property. The desired line of questioning went directly to the circumstances of the transaction in which Lares might have criminal responsibility and therefore the trial judge properly allowed Lares to invoke his privilege.
While we uphold the trial court’s ruling allowing Lares to invoke his privilege against self incrimination, the invocation of such a privilege raises serious questions concerning the due process rights of a defendant who is caught between the state’s vigorous efforts to ferret out sellers of stolen property and individuals who as agents of the state have a direct pecuniary interest in seeing the state’s efforts succeed, but who, because of their criminal involvement, are protected from scrutiny by the trier of fact. The question simply put is: may the state through the criminal activity of its paid agents deprive a defendant of the opportunity to present witnesses for his' defense?
In arriving at an answer to this question, some fundamental precepts of the American criminal justice system must be reiterated. First, a criminal defendant under our system is presumed to be innocent. State v. Morse, 127 Ariz. 25, 617 P.2d 1141 (1980). Supportive of this concept is the constitutional safeguard that a criminal defendant is entitled to call witnesses in his behalf and to present to a jury of his peers a complete defense. United States v. Ballesteros-Acuna, 527 F.2d 928 (9th Cir.1975). Inherent in this safeguard is the *208 prohibition against state interference with the complete exercise of that right. See United States v. Goodwin, 625 F.2d 693 (5th Cir.1980); State v. Stewart, 131 Ariz. 407, 641 P.2d 895 (App.1982).
Also fundamental to the criminal justice system is the right guaranteed to an individual by the fifth amendment to the United States Constitution to not be required to incriminate himself. When the sixth amendment right to present witnesses on the defendant’s behalf conflicts with the right of a witness not to incriminate himself, the general rule is that the right against self incrimination must take precedence, for a citizen should not be faced with criminal prosecution in order to prove the innocence of a third party. See, e.g., United States v. Goodwin, supra; United States v. Trejo-Zambrano, 582 F.2d 460 (9th Cir.), cert. denied sub nom. Fierro-Soza v. United States, 439 U.S. 1005, 99 S.Ct. 618, 58 L.Ed.2d 682 (1978).
However, where the criminal activity is instituted through efforts of the state by paid agents and the guilt or the innocence of the defendant depends upon the testimony of that paid agent, the state’s right to obtain a conviction cannot hinge on the gossamer thread of the criminal involvement of its own agent and his willingness to testify. This is especially true where the availability of that testimony is completely controlled by the state through the exercise of transactional immunity. A.R.S. § 13-4064; State v. Buchanan, 110 Ariz. 285, 518 P.2d 108 (1974). In short, like the defendant’s characterization of Lares’ position in this case, the state cannot have it both ways. It cannot use paid informers to uncover criminal activity and at the same time deprive the defendant of the opportunity to prove his innocence of that activity because of the criminal involvement in the same transaction of their paid agent. This process smacks of such unfairness as to deprive the defendant of due process.
Because of our resolution of this issue, we do not reach other issues raised by the defendant in this appeal.
The judgment is reversed and the matter remanded for a new trial.
OGG, J., concurs.