641 P.2d 895
**STATE of Arizona, Appellee,**

v.

**Hervell A. STEWART, Appellant.**

**No. 1 CA–CR 4978.**

Court of Appeals of Arizona,
Division 1.

Jan. 7, 1982.
Rehearing Denied Feb. 11, 1982.
Review Denied March 2, 1982.

Robert K. Corbin, Atty. Gen. by William J. Schafer, III, Chief Counsel, Crim. Div.,

**408**

Barbara A. Jarrett, Asst. Attys. Gen., Phoenix, for appellee.

Murray Miller, P. C. by Murray Miller and Diane S. Lindstrom, Phoenix, for appellant.

## OPINION

CORCORAN, Judge.

Defendant was convicted of attempted third degree burglary and possession of burglary tools following a trial by jury and was sentenced to serve a term of 3.75 years on each count, the sentences to run concurrently. On this appeal he raises one issue for consideration: whether he was denied his constitutional right to compel witnesses to testify in his behalf. We hold that he was not and affirm the judgments and sentences.

The facts which give rise to this appeal show that in the early morning hours of February 2, 1980, Alice Heisterman was going home from the McGuireville Cafe in McGuireville, Arizona when she observed a man standing near her car. Her home was across the street from the cafe. She spoke with him briefly and went inside her house. From there she observed a group of young men, including the man who had been next to her car, peering in the McGuireville Bar, the McGuireville Cafe, and an empty room between the bar and cafe. Although her testimony at trial was confused about what she observed and when, she became suspicious when she saw a pickup truck without lights drive toward the rear of the bar. She then walked across the street to the rear of the bar and observed a man on his knees pounding with some object on the door frame of the McGuireville Bar.

Heisterman reported her observations to Betty Hagerman, the owner of the McGuireville Cafe, which was located next to the bar. Hagerman telephoned the Yavapai County Sheriff's Office in Prescott. Hagerman, Willard Harland, a cook in the cafe, and Heisterman all went outside and observed the person at the back door of the bar. Hagerman and Harland made loud noises throwing garbage away to see if the man would leave. He did not leave, but rather crouched down as if to hide. Heisterman, Hagerman, and Harland then went back into the cafe. Harland came back out and observed a man at the door of the bar for approximately 4 to 5 minutes when Deputy Rolland Huff arrived at the scene.

Deputy Huff testified that he observed a man crouched down at the back door of the bar apparently using a long slender object to pry the door open. Huff also heard the splintering or breaking of wood. He approached the man and said "Freeze. Police officer." The man then threw down the object he had in his hand. Huff arrested the man and found a large screwdriver in the garbage can near the door, and a smaller screwdriver in the man's pocket. He found chips of wood on the ground by the back door of the bar, seized them for evidence, and took photographs of the damage to the door.

The defense at trial was that the attempted burglary was perpetrated by a group of persons, not including the defendant, with whom the defendant had an altercation earlier. Implicit in the defense of the case was the notion that the group of people actually responsible for the attempted break-in was the same group of people observed by Heisterman near her car and looking in the window of the bar and cafe earlier in the night. One of the defendant's friends testified that he drove into McGuireville in time to observe the defendant and another man shoving and pushing each other and then see the defendant run behind the bar. William Tishey, another friend of the defendant testified that he was asleep in the defendant's truck in the early morning hours of February 2, 1980, when he was awakened by a woman deputy sheriff. This deputy took Tishey into the McGuireville Cafe and asked several people in the cafe if they could identify him as one of the suspects in the attempted burglary of the bar. One of the patrons of the cafe told the officer that Tishey was not a suspect because he had been in the cafe eating, and the deputy released Tishey. The deputy who had the exchange with Tishey was discovered to be Deputy Kathy McLaughlin.

Prior to trial, Deputy McLaughlin took a leave of absence and apparently went to Alaska. On September 3, 1980, the defendant made a motion to dismiss the indictment or, in the alternative, a motion to continue the trial date on the ground that he was unable to subpoena Deputy McLaughlin. The trial court denied the motion to dismiss the indictment, but granted the motion to continue. Defendant then renewed his motion to dismiss the indictment on September 12, 1980, based on the unavailability of Deputy McLaughlin, and the trial court denied that motion. Again, on September 15, 1980, the defendant moved to continue the trial on the same grounds; the trial court denied the motion to continue, and the case proceeded to trial on September 16, 1980. Apparently, following trial but before the imposition of sentence, Deputy McLaughlin returned to Arizona, and defendant filed a motion for new trial asserting that she was then available to testify. The motion was denied and the defendant was sentenced to prison.

The defendant contends on appeal that he was denied his constitutional right to compel witnesses to testify in his behalf due to the absence of Deputy McLaughlin. The sixth amendment to the Constitution of the United States provides that the accused in all criminal prosecutions shall have the right "to have compulsory process for obtaining witnesses in his favor." The Arizona Constitution contains a similar provision. Ariz.Const.Art. 2, § 24. The Supreme Court in *Washington v. Texas*, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967), held that the right to compulsory process guaranteed by the Sixth Amendment is a fundamental element of due process of law, and as such is applicable to the states. In so holding the Supreme Court recognized that the right to compel the attendances of witnesses and offer their testimony was "in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies." 388 U.S. at 19, 87 S.Ct. at 1923.

While what constitutes an infringement on the defendant's rights to compulsory process has been the subject of very little comment in Arizona, numerous federal jurisdictions have had occasion to address the issue. In those cases in which a violation of the defendant's constitutional rights has been found, there has always been government action which resulted in the unavailability of the witness. For example, in *Washington v. Texas*, a Texas statute was held unconstitutional as violative of the defendant's sixth amendment rights which provided that persons charged or convicted as co-participants in the same crime could not testify for one another although there was no bar to their testifying for the state. In *United States v. Mendez-Rodriguez*, 450 F.2d 1 (9th Cir. 1971), *United States v. Tsutagawa*, 500 F.2d 420 (9th Cir. 1974), and *United States v. Calzada*, 579 F.2d 1358 (7th Cir. 1978) the courts held as violative of the defendants' rights to compulsory process the actions of the government in deporting illegal aliens who were potential witnesses for the defendants charged with having transported the aliens. In *Singleton v. Lefkowitz*, 583 F.2d 618 (2nd Cir. 1978), the government improperly released from custody a material defense witness, and the court held that this government action violated the defendant's sixth amendment rights.

It is clear, however, that the duty to present a defense devolves upon the defendant who must plead and prove his own case and is responsible for the production of witnesses in his behalf. *Ferrari v. United States*, 244 F.2d 132 (9th Cir.), *cert. denied*, 355 U.S. 873, 78 S.Ct. 125, 2 L.Ed.2d 78 (1957). The government is under no obligation to produce witnesses for the defense, "in the absence of a showing that such witnesses were made unavailable through the suggestion, procurement or negligence of the [government]." *Ferrari v. United States*, 244 F.2d at 141. Thus, while a defendant has the "right to formulate his defense *uninhibited by government conduct* that, in effect, prevents him from interviewing witnesses who may be involved and from determining whether he will subpoena and call them in his defense," *United States*

*v. Tsutagawa*, 500 F.2d at 423 (emphasis added), we conclude that there is no violation of the right to compulsory process when the unavailability of the witness has not resulted from the suggestion, procurement, or negligence of the government. *Ferrari v. United States, supra.*

■ In the instant case, the defendant argues that the state was negligent in allowing Deputy McLaughlin to go to Alaska when she was a potential witness in the case. The record before us, however, does not reveal negligence on the part of the state. It is clear that the deputy sheriff of her own accord, simply took a leave of absence to which she was entitled, and went to Alaska leaving no forwarding address. The facts of this case are analogous to the facts in *Ferrari v. United States, supra,* wherein a Miss Jones, who had assisted an undercover narcotics agent, had ceased to assist the Bureau of Narcotics and had not been seen by the Bureau for approximately six months before trial. The court there held that Miss Jones' absence was not a result of government conduct, that the government had no duty to look for the missing witness, and that there was no violation of defendant's right to compulsory process.

Having determined that there was no government conduct which interfered with the defendant's exercise of his constitutional rights, we need not address the defendant's arguments concerning whether prejudice to his case must be shown [1] or whether the defendant and not the state has the right to determine who is a material witness for the defense.[2] We do need, however, to address the propriety of the trial court's ruling denying the motion for new trial after Deputy McLaughlin had again become available. The granting or denial of a motion for new trial is within the discretion of the trial court and will not be reversed on appeal absent an abuse of that discretion. *State v. Jones*, 125 Ariz. 417, 610 P.2d 51 (1980). In this case, the defendant made no attempt to interview Deputy McLaughlin before the argument on the motion for new trial, nor did he seek a continuance of the argument on the motion in order that he might interview the witness. Thus, the defendant failed to present to the trial court any information concerning what Deputy McLaughlin could testify to and the potential usefulness of that testimony to the defendant aside from what the trial court could glean from having presided in the case.[3]

■ The information before the trial court at the time it ruled on the motion for new trial was, that Deputy McLaughlin did not participate in the investigation of the case until after the defendant had been arrested, and then, only collaterally in that she interviewed one friend of the defendant briefly on the morning of the offense. Based on this record it appears that the trial court could only conclude that her testimony would be cumulative to that of Tishey, and therefore the motion for new trial was denied. We find that the trial court did not abuse its discretion in so ruling.

For the foregoing reasons, the judgments and sentences are affirmed.

CONTRERAS, P. J., and OGG, J., concur.

---

1. *See, United States v. Calzada, supra,* where government interference was involved.

2. *See, United States v. Tsutagawa, supra,* where government interference was involved.

3. In oral argument before trial on defendant's motion to dismiss the indictment, his attorney stated: "[W]e are not quite sure what this agent [Deputy McLaughlin] could testify to because she is not available...."