755 P.2d 440

**The STATE of Arizona, Appellee,**

v.

**Bernard Michael McKINLEY, Appellant.**

**No. 2 CA–CR 87–0012.**

Court of Appeals of Arizona, Division 2, Department A.

Feb. 18, 1988.

Redesignated as Opinion and Publication Ordered March 22, 1988.

Review Denied June 9, 1988.

Robert K. Corbin, Atty. Gen. by Bruce M. Ferg, Tucson, for appellee.

Robertson & Villarreal, Ltd. by Michael A. Villarreal, Florence, for appellant.

LACAGNINA, Chief Judge.

Bernard Michael McKinley appeals his convictions for sexual conduct with a minor and child molestation, both of a dangerous nature, and the court's imposition of concurrent, mitigated terms. He argues reversible error as follows:

1. There was insufficient evidence to sustain the convictions.

2. There was inadequate foundation for the admission of evidence of McKinley's prior bad acts to show an emotional propensity for sexual aberration.

3. Expert testimony regarding the emotional propensity for sexual aberration exceeded the limits outlined in *State v. Lindsey,* 149 Ariz. 472, 720 P.2d 73 (1986), and *State v. Moran,* 151 Ariz. 378, 728 P.2d 248 (1986).

4. The mandatory sentence imposed under A.R.S. § 13–604.01 is unconstitutional.

5. The court erred in its instruction concerning emotional propensity and in failing to give McKinley's proposed instruction concerning the credibility of witnesses.

6. McKinley was entitled to call the victim's school psychologist regarding the victim's reputation for truthfulness.

7. McKinley was entitled to a mistrial based on the prosecutor's improper ques-

tions of a certain defense character witness.

8. The state impermissibly shifted the burden of proof to McKinley on the issue of the independent testing of the semen specimen.

We affirm.

### FACTS

The victim was a 13–year–old girl living with her aunt at the time of the molest. The victim's aunt was married to McKinley, and the three lived in a mobile home. Prior to the time of the incident upon which the charges were based, McKinley had routinely walked around in the trailer naked. In addition, he had "French kissed" the victim twice.

On the night of the molest, the victim and her aunt were in the master bedroom working on a crossword puzzle. Her aunt told the victim to go to bed whereupon she went to the bathroom and then to the kitchen. As she approached her bedroom, McKinley came out of that bedroom, pushed the victim into the living room, tripped her, straddled her, pulled her underwear to the side and penetrated her vagina with his penis. Following the incident, the victim returned to her bedroom and changed her underwear because it was wet and then sneaked out to the home of a neighbor where she telephoned her mother. She was later taken to the police department and to the hospital. She eventually recovered the wet underwear which was admitted into evidence at trial. The above testimony by the victim was generally corroborated by the neighbor.

In addition, analysis of semen stains found on the victim's underwear showed a blood type and contained a PGM enzyme type matching McKinley's. As the expert testified, this evidence narrowed the possible suspects to only 15% of the population. This analysis was the result of a re-test; the initial results were unclear. The semen stains were preserved for independent testing by the defense, but no such tests were performed.

The jury heard testimony from three of McKinley's daughters concerning prior molests which occurred over a period of years. One stepdaughter, who was 28 years old at the time of trial, testified that she lived with McKinley from the time she was 10 until she was 17 years old, that he was naked in the house most of the time, sometimes with erections. Many times she was awakened in the middle of the night to find McKinley standing naked at her bedside touching her vagina. She also testified that on one occasion McKinley was in the apartment naked when she came in wearing a swimsuit. He untied her top and forced her arm to touch his erect penis. The second witness, another stepdaughter, was 22 years old at the time of trial and told similar stories about McKinley's actions toward her including events that occurred in 1974, when she was nine years of age. Finally, McKinley's natural daughter testified that in 1984 McKinley often wrestled with her and while doing so fondled her breasts and vagina, both on top of and underneath her clothing. Two experts testified that given the testimony of the three prior victims as true, it showed an emotional propensity for child molestation.

### EXPERT TESTIMONY AND SUFFICIENCY OF EVIDENCE

McKinley argues the expert medical testimony concerning his propensity toward sexual aberration was unreliable and should not have been admitted. We disagree. Dr. Rosensweig's reliance in part on the testimony of the victims concerning McKinley's prior bad acts provided a proper basis for his expert opinion. It was also proper for the expert in this case to give a limited opinion. *See* M. Udall and J. Livermore, *Arizona Law of Evidence* § 23 (2d ed. 1982). The expert testimony was also necessary because certain of the alleged prior bad acts did not occur close in time to the charged offense. *See State v. Cousin,* 136 Ariz. 83, 664 P.2d 233 (App.1983).

In addition, we find the substance of the expert testimony was not in violation of the rules enunciated in *State v. Lindsey* and *State v. Moran.* In particular, *Lindsey* and *Moran* allow general testimony

concerning characteristics of child molest victims, *e.g.*, truancy, and the failure to immediately report the crime. Dr. Rosensweig's testimony concerning certain general characteristics of the child molest victims (*e.g.*, coming from troubled homes) are also allowable under *Lindsey* and *Moran*. In addition, McKinley called his own expert who testified to the reasons for false reports of molestation, including the tendency of teenagers to intentionally lie about a molest. There was no testimony concerning the truthfulness of the victim or the probable truthfulness of a particular class of witnesses, except to the extent it was invited by the testimony of McKinley's expert. Dr. Rosensweig's testimony concerning the percentage of in-home molests as opposed to molests by strangers was harmless error, if any, considering other physical evidence of McKinley's guilt, and the corroboration of the victim's story. A rational trier of fact could have found guilt beyond a reasonable doubt. *State v. Routhier*, 137 Ariz. 90, 669 P.2d 68 (1983), *cert. denied*, 464 U.S. 1073, 104 S.Ct. 985, 79 L.Ed.2d 221 (1984).

## SENTENCING AND INSTRUCTIONS

■ McKinley's concurrent mitigated prison terms of 12 and 15 years respectively, authorized under A.R.S. § 13–604.01(D) and (E), have been held constitutional. *State v. Crego*, 154 Ariz. 278, 742 P.2d 289 (App.1987). Absent a constitutional claim, the minimum statutory sentence with mitigating factors stated on the record will be affirmed. *See State v. Limpus*, 128 Ariz. 371, 378, 625 P.2d 960, 967 (App.1981).

■ McKinley's proposed instructions concerning the credibility of witnesses to the extent that they were not waived by trial counsel's failure to specifically object have been 1) previously rejected by this court in *State v. Carter*, 123 Ariz. 528, 601 P.2d 291 (App.1978), *reversed in part on other grounds*, 123 Ariz. 524, 601 P.2d 287 (1979), or 2) were either covered by other instructions, or were proper statements of the law.

## CONSTITUTIONAL CLAIM

■ The trial court's refusal to call the victim's school psychologist to testify as to her reputation for truthfulness because of the statutory privilege, A.R.S. § 32–2085, is not argued by McKinley on appeal. Instead, he argues a violation of his right to confront witnesses, citing the sixth amendment. Because he did not make this claim at trial, it is waived on appeal. *State v. Tison*, 129 Ariz. 526, 535, 633 P.2d 335, 344 (1981), *cert. denied*, 459 U.S. 882, 103 S.Ct. 180, 74 L.Ed.2d 147 (1982). Furthermore, in light of McKinley's intent to produce the psychologist as his own witness, there is no confrontation issue, and the testimony would have been cumulative evidence of the victim's propensity to fabricate stories. There was no error in the court's exercise of its discretion in not allowing the testimony.

## COUNSEL MISCONDUCT

■ The prosecutor asked one of McKinley's character witnesses if she would have the same opinion concerning McKinley's character if she knew his wife had accused him of having extramarital affairs with two different women. The question was never answered because the objection to it was sustained, and the court further cured any error by instructing the jury to disregard the question by subsequent general instructions. The error, if any, was harmless. *State v. Ferguson*, 149 Ariz. 200, 210–211, 717 P.2d 879, 889–890 (1986).

■ The prosecutor's argument to the jury that McKinley had the opportunity to independently test the semen samples and failed to do so did not shift the burden of proof to McKinley. That issue has been decided adversely to him in *State, ex rel. McDougall v. Corcoran*, 153 Ariz. 157, 735 P.2d 767 (1987), where the court found such argument was not a comment on a defendant's silence if it constitutes rebuttal to the accused's challenge of the test results.

Affirmed.

HOWARD, P.J., and HATHAWAY, J., concur.