17 P.3d 118

**The STATE of Arizona, Appellee,**

v.

**Francisco Feliciano CARLOS, Appellant.**

**No. 2 CA–CR 99–0546.**

Court of Appeals of Arizona,
Division 2, Department A.

Jan. 25, 2001.

Reconsideration Denied Feb. 20, 2001.

Review Denied June 4, 2001.

Janet Napolitano, Arizona Attorney General by Paul J. McMurdie and Donna J. Lam, Tucson, Attorneys for Appellee.

Michael A. Villarreal, Florence, Attorney for Appellant.

## OPINION

BRAMMER, Presiding Judge.

¶ 1 Following a jury trial, appellant Francisco Feliciano Carlos was convicted of dangerous or deadly assault by a prisoner and promoting prison contraband by knowingly making, obtaining, or possessing a "shank," a type of handmade knife. He was sentenced to aggravated, consecutive, 7.5–year prison terms. Carlos argues on appeal that the trial court erred by precluding him from calling as a witness F., the alleged victim of the assault, and by denying his motion for a judgment of acquittal, made pursuant to Rule 20, Ariz.R.Crim.P., 17 A.R.S. Although we find that the evidence presented was sufficient to withstand the Rule 20 motion, because we conclude that the trial court erred

by precluding F. from testifying, we reverse Carlos's convictions and sentences. We do not address his additional arguments on appeal.

## Facts and Procedural History

¶ 2 We view the evidence and reasonable inferences therefrom in the light most favorable to sustaining the verdicts. *State v. Nihiser*, 191 Ariz. 199, 953 P.2d 1252 (App. 1997). In August 1997, Carlos was an inmate at the state prison in Florence. A corrections officer, M., was escorting a group of inmates, including F., from the dining hall to their dormitory when he saw Carlos, an inmate not.part of the group, "run up and start attacking" F., twice hitting him in the face. Although M. saw a third inmate, Garcia, join the fight and use some type of weapon to beat F., M. could not initially see whether Carlos also had a weapon. However, after breaking up the fight, M. saw that Carlos was, in fact, holding a shank. Another officer also saw both Carlos and Garcia holding shanks after the fight and ordered them to drop the weapons and lie on the ground. An investigator later recovered two shanks from the area where the attack had occurred. F. was treated for stab wounds to his upper torso and face that, according to his doctor, had been made by "a sharp cutting instrument." Neither Carlos nor Garcia sustained any documented injuries.

¶ 3 At Carlos's first trial in June 1999, he was allowed to call F. as a witness, although it was unclear whether F. would agree to testify. The court overruled the state's objection to Carlos's calling F. as a witness, stating Carlos had an "obvious" right to do so. F., however, refused to take the witness's oath, twice responding before the jury, "F— that," to the court's request that he raise his right hand to be sworn. When asked by the court whether he would "cooperate at all in this courtroom," F. responded, "Nope," and was excused. The record reflects that F. also "turned his back" on the judge and refused to face the attorneys. The court eventually declared a mistrial after the jury was unable to reach a verdict.

¶ 4 The second trial began in September 1999. Carlos filed a pretrial motion in which he stated he intended to call F. as a witness, arguing that his testimony would be highly relevant. The state filed a motion in limine to preclude F. from being called as a witness, arguing that he would "not provide any testimony whatsoever," given his lack of cooperation at the first trial and his refusal to be interviewed since then. The court ruled that Carlos could not call F. as a witness unless he could "first establish that [F. would] cooperate as a witness" at trial.

¶ 5 On the first day of trial, Carlos asked the court to reconsider its ruling and allow him to call F. as a witness, arguing there had been no indication that F. would "invok[e] his Fifth Amendment privilege." The state objected, stating F. "offers nothing of probative value" because "he refuses to even take the oath." Carlos responded that, even if F. again simply refused to take the oath, as he had at the first trial, the jury could still draw significant inferences from his refusal. The court asked Carlos's counsel if she had interviewed F. to determine whether he would cooperate with the court. She answered, "I cannot establish that, no, Your Honor. He refuses to meet with me." The court stated, "I'm not going to have him back in here and say as he did last time a comment about the Court." Carlos argued that it would be unfair to assume that F. would behave the same as he had at the first trial. The court reiterated that Carlos's counsel should have interviewed F. Without conducting a hearing, the court affirmed its previous ruling.

## Rule 20 Motion

■ ¶ 6 Carlos contends that there was insufficient evidence from which reasonable jurors could have found him guilty of the charged offenses and that the trial court erred in denying his motion for judgment of acquittal pursuant to Rule 20, Ariz.R.Crim.P. We disagree.

■ ¶ 7 A person commits dangerous or deadly assault by a prisoner if, while incarcerated, he or she commits an assault while using or exhibiting a deadly weapon or dangerous instrument or intentionally or knowingly inflicts serious bodily injury on another.

A.R.S. § 13–1206. A person promotes prison contraband if, while incarcerated, he or she knowingly makes, obtains, or possesses contraband, such as a deadly weapon. A.R.S. § 13–2505(A)(3). We review a trial court's denial of a Rule 20 motion for an abuse of discretion and will reverse a conviction only if there is a complete absence of substantial evidence to support the charges. *State v. Sullivan*, 187 Ariz. 599, 931 P.2d 1109 (App. 1996).

¶ 8 Testimony was presented that Carlos had attacked F. without apparent provocation, that F. had sustained numerous stab wounds, and that Carlos had been seen holding a shank immediately after the attack. No contradictory evidence was presented that Carlos had acted in self-defense when fighting with F. or when acquiring the shank. Thus, there was sufficient evidence to withstand Carlos's motion for a judgment of acquittal on each charge. See Ariz.R.Crim.P. 20(a); *Sullivan.*

## Preclusion of Victim as Witness

■ ¶ 9 Carlos contends that the trial court erred when it precluded him from calling F. as a witness, arguing that F.'s presence was "crucial" to his defense and, therefore, that his Sixth Amendment right to call witnesses and present evidence was violated. U.S. Const. amend. VI; see also Ariz. Const. art. II, § 24 ("In criminal prosecutions, the accused shall have the right ... to have compulsory process to compel the attendance of witnesses in his own behalf."). The state argues that, because F. refused to cooperate with the court at Carlos's first trial, he was likely to be uncooperative again at retrial. According to the state, it would have been pointless for Carlos to have called F. to testify at retrial because he would not have provided any testimony, much less testimony that would have been relevant to the case. Furthermore, even if F. had testified, his testimony would not have been favorable to Carlos because F. was the alleged victim of an assault by Carlos. Therefore, the state argues, the court was not required to subpoena F. to testify unless and until Carlos assured the court that F. would cooperate at retrial. And, if Carlos was unable to do so,

the court was not required to hold a hearing to determine if F. intended to cooperate.

■ ¶ 10 We review for an abuse of discretion a trial court's decision on whether to allow witness testimony. *State v. Talley*, 112 Ariz. 268, 540 P.2d 1249 (1975); *State v. McKinley*, 157 Ariz. 135, 755 P.2d 440 (App. 1988). We find that the trial court abused its discretion by denying Carlos's request to call F. as a witness, without first determining whether F. would, indeed, refuse to cooperate. We can find no basis for upholding the trial court's ruling. See *State v. Nadler*, 129 Ariz. 19, 628 P.2d 56 (App.1981) (reviewing court may uphold trial court ruling on any basis if correct result reached).

¶ 11 We first reject the state's assertion that F.'s proposed testimony would have been irrelevant or immaterial. It does not appear that the trial court, even implicitly, ruled that F. could not be called as a witness for this reason. Indeed, the trial court apparently acknowledged the relevancy of F.'s testimony in the first trial when it stated Carlos had an "obvious" right to call F. as a witness. Rather, the record reflects that the court precluded Carlos from calling F. as a witness based on its concern that F. would again be disrespectful to the court and uncooperative. In any event, we agree with the intuitive conclusion the trial court expressed at the first trial that F.'s testimony would be relevant and material because he was the victim. See *Washington v. Texas*, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967) (error to preclude witness capable of testifying from personal observation).

■ ¶ 12 Next, we find no merit to the state's argument that we may affirm the trial court's ruling because Carlos was unable to show that he was denied favorable evidence when the court precluded him from calling F. as a witness. Although the state argues that a defendant generally can rely on the Compulsory Process Clause to compel the attendance of only those witnesses whose testimony is favorable to the defense, we find no authority requiring a defendant to show that a victim will provide favorable testimony before being permitted to call such a witness to testify.[1]

¶ 13 The state relies on the Supreme Court's decision in *United States v. Valenzuela–Bernal*, 458 U.S. 858, 102 S.Ct. 3440, 73 L.Ed.2d 1193 (1982), for the proposition that a defendant's Sixth Amendment right is not violated if the defendant is prevented from calling a witness, unless the defendant can first show that the proposed witness's testimony would be both material and favorable to the defense. The situation in that case, however, was very different than that here. The defendant in *Valenzuela–Bernal* challenged the government's prompt deportation of witnesses he claimed were necessary to his defense before he had an opportunity to determine whether they could provide favorable testimony. Applying a balancing test, the Court determined that the expense and inconvenience to the government in keeping illegal-alien witnesses in custody outweighed the defendant's Sixth Amendment right to compulsory process, unless the defendant was able to show the witnesses' testimony would have been both material and favorable. The Court stated: "In adopting this standard, we express no opinion on the showing which a criminal defendant must make in order to obtain compulsory process for securing the attendance at his criminal trial of witnesses within the United States." *Id.* at 873 n. 9, 102 S.Ct. at 3449 n. 9, 73 L.Ed.2d at 1206 n. 9. The *Valenzuela–Bernal* Court did not intend to dictate in that case "a static rule in respect to the showing a defendant must make in every case. Rather, *Valenzuela–Bernal* reflects the proper balancing in . . . a setting [in which the government] interest weighing against access to the witnesses was particularly strong." *United States v. Bailey*, 834 F.2d 218, 223 (1st Cir. 1987). F., in contrast, was readily available and is not susceptible to deportation.

¶ 14 Moreover, in none of the Arizona cases the state cites that have applied this doctrine had the trial court precluded the

---

1. The dissent cites *Cacoperdo v. Demosthenes*, 37 F.3d 504 (9th Cir.1994), contending it contradicts this position. The claimed error in that case, however, was not that the trial court denied the defendant's request to call the victim as a witness, but rather that the defendant was unable to interview the victim—the state's witness—before trial.

alleged victim from testifying. Rather, the precluded witness had been either an accomplice who was tried separately, *State v. Henry*, 176 Ariz. 569, 863 P.2d 861 (1993), or a person whom the defendant claimed was the actual perpetrator of the crime. *State v. McDaniel*, 136 Ariz. 188, 665 P.2d 70 (1983); *State v. Maldonado*, 181 Ariz. 208, 889 P.2d 1 (App.1994). Other cases involved situations in which the defendant had been unable to call a witness or witnesses to testify because the witnesses were unavailable. See *State v. Nieto*, 186 Ariz. 449, 924 P.2d 453 (App.1996); *State v. Stewart*, 131 Ariz. 407, 641 P.2d 895 (App.1982).

¶ 15 In an analogous Wisconsin case, the Wisconsin Court of Appeals found the trial court had violated the defendant's Sixth Amendment right to compulsory process by denying his request to subpoena the victim as a witness. *State v. Sorenson*, 152 Wis.2d 471, 449 N.W.2d 280 (Ct.App.1989). Like F., the victim was available. The court did not require that the defendant first show that the victim's testimony would be favorable to the defendant, but rather stated that, unless the state could prove a legitimate countervailing interest, the defendant had the right to call the victim as a witness.

¶ 16 We agree with the Wisconsin court's reasoning and decline to impose on Carlos a requirement that he show F.'s testimony would have been favorable as a condition precedent to his calling F. to testify. F. was readily available, and we find no legitimate interest countervailing Carlos's right to compulsory process. Carlos was required to show only that F.'s testimony would have been "relevant and material to the defense." *Washington*, 388 U.S. at 23, 87 S.Ct. at 1925, 18 L.Ed.2d at 1025. As previously stated, because F. was the victim, his testimony about the incident would have been both relevant and material. We need not speculate about Carlos's motives for wanting to call F. as a witness beyond noting that Carlos had "the right to present [his] version of the facts as well as the prosecution's to the jury so it may decide where the truth lies." *Id.* at 19, 87 S.Ct. at 1923, 18 L.Ed.2d at 1023. Assuming that Carlos wanted to call F. because he expected F.'s testimony to be favorable, Carlos was entitled to take the risk that it would not be.

■ ¶ 17 Finally, we find the trial court erred by predicating Carlos's right to call F. as a witness on Carlos's ability to assure the court that F. would cooperate at retrial. Although we have found no Arizona cases directly addressing the court's responsibility to a defendant when the defendant wishes to call a witness who might not cooperate with the court, we find analogous those cases in which a witness might refuse to testify by invoking the Fifth Amendment privilege against self-incrimination.

¶ 18 Courts have held that a defendant's Sixth Amendment right to compel a witness's attendance at trial can be "trumped" by the witness's invocation of his or her Fifth Amendment right to refuse to testify at the defendant's trial. *McDaniel*; *State v. Mills*, 196 Ariz. 269, 995 P.2d 705 (App.1999); *Maldonado*. In these cases, the trial court must first make a factual inquiry to determine the witness's intentions before it can preclude the defendant from calling the witness. The court must develop such "extensive knowledge of the case" by, for example, conducting a hearing or personally questioning the witness, that it can determine "that the Fifth Amendment would be properly invoked in response to all relevant questions that the party calling the witness plans on asking." *McDaniel*, 136 Ariz. at 194, 665 P.2d at 76.

¶ 19 If such a fact-finding procedure is necessary in situations in which the defendant's and the witness's constitutional rights are in conflict, we believe it to be even more essential in cases like Carlos's, in which the witness might merely refuse to cooperate with the court. Furthermore, because the record reflects that, during the court's brief interaction with F. at the first trial, F. did not disclose his motives for refusing to cooperate at that time, there was no basis for the court's apparent assumption that F. would refuse to cooperate at Carlos's retrial. We therefore conclude that, at Carlos's second trial, the court should have followed the fact-finding procedures prescribed above in order to fulfill its responsibility to properly determine whether F. would again have refused to cooperate. Instead, the trial court shifted to

Carlos the responsibility of showing F. would cooperate.

¶ 20 We find the court erred when it refused to compel F. to appear before the court after Carlos informed the court that F. had refused to talk with him and then asked the court to use its "powers" to compel F. to take the stand.[2]  Because F. was incarcerated at the time of the assault, he was not entitled to the protections of the Victims' Bill of Rights, and thus had no constitutional right to refuse an interview with Carlos under article II, § 2.1, of the Arizona Constitution.  *Stapleford v. Houghton*, 185 Ariz. 560, 917 P.2d 703 (1996).  Carlos was entitled to the court's assistance in obtaining the necessary information from F., who should have been compelled to appear before the court and submit to questioning about his intent to cooperate.  *Cf. id.* (finding error in denial of defendant's motion to compel pretrial interview with inmate victim); *State v. Brady*, 122 Ariz. 228, 594 P.2d 94 (1979) (due process violation to deny defendant's motion to summon out-of-state material witness to testify under Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings under A.R.S. §§ 13–4091 through 13–4096).

¶ 21 Thus, the trial court was required to conduct an inquiry before the second trial. The trial court's concern about possible prejudice resulting from F.'s anticipated disrespectful actions in court at Carlos's retrial could have been adequately avoided had it allowed F. to be questioned out of the presence of the jury.  See *McDaniel* (court held hearing outside presence of jury at which prospective witnesses stated intention to invoke privilege if called to testify); *Maldonado* (court held in-chambers hearing with both defense counsel and prosecution present at which prosecutor recounted verbatim witness's repeated assertions of privilege during prior interview with prosecutor).

¶ 22 We hold, therefore, that the trial court denied Carlos his Sixth Amendment right to compulsory process by precluding him from calling F. as a witness at his second trial before making an appropriate inquiry to determine whether F. would cooperate if called as a witness.  Because F. might agree to cooperate at retrial after remand, we do not address Carlos's additional claim that the court must determine F.'s intention to cooperate in front of the jury.

### Harmless Error Review

¶ 23 Having found that the trial court erred in precluding F. from testifying, our next inquiry is whether the error was harmless.  *State v. Fuller*, 143 Ariz. 571, 694 P.2d 1185 (1985).  We conclude it was not.

¶ 24 To determine if trial error was harmless, the inquiry is not whether a guilty verdict would have been rendered in an errorless trial, but whether the guilty verdict was unattributable to the trial error.  *State v. Bible*, 175 Ariz. 549, 858 P.2d 1152 (1993); see also *State v. Hall*, 12 Ariz.App. 147, 468 P.2d 598 (1970) (test of whether there was sufficient evidence to convict not appropriate standard for determining whether error harmless beyond reasonable doubt).  We must reverse a conviction unless we are "confident beyond a reasonable doubt that the error had no influence on the jury's judgment."  *Bible*, 175 Ariz. at 588, 858 P.2d at 1191.  We determine on a case-by-case basis whether trial error was harmless, as there is no bright line rule.  *Id.*  When reviewing whether a trial court's improper preclusion of a defense witness's testimony is harmless, we look to see whether there was other "overwhelming" evidence of the defendant's guilt, *Fuller*, 143 Ariz. at 574, 694 P.2d at 1188, or whether the witness's testimony would have been merely cumulative of other evidence in the case.  *State v. McKinley*, 157 Ariz. 135, 755 P.2d 440 (App.1988).

¶ 25 We conclude that the evidence against Carlos, although compelling, was not overwhelming.  His was not a case in which multiple eyewitnesses testified to substantial-

---

**2.** Carlos only asked the court to compel F. to testify.  However, because the state does not argue that Carlos has waived his claim of error by failing to specifically ask for a hearing, and because we find that Carlos was implicitly asking the court to hold a hearing to determine F.'s intentions if the court chose not to compel F. to take the stand, we do not find Carlos's claim waived.

ly the same course of events. Thus, had F. testified, his testimony would not have been merely cumulative. Indeed, as the alleged victim, F. clearly had additional relevant evidence to offer as to his recollection of the events.

¶ 26 We can only speculate about the possible content of F.'s testimony. Although his testimony might have been consistent with that of other eyewitnesses as to whether Carlos was the aggressor in the fight or the owner of the shank, it is also possible that F.'s testimony might have contradicted that of the other eyewitnesses and supported Carlos's claims that his actions during the fight, including his momentary handling of the shank, were in self-defense. Cf. *State v. Tyler*, 149 Ariz. 312, 316, 718 P.2d 214, 218 (App.1986) (defendant's theory at trial was that his mere "momentary innocent handling" of prohibited weapon failed to show "necessary degree of dominion or control" to be criminal possession). The jury would then have been required to weigh the evidence and determine witness credibility accordingly. See *State v. Money*, 110 Ariz. 18, 514 P.2d 1014 (1973); *State v. Belyeu*, 164 Ariz. 586, 795 P.2d 229 (App.1990). Because F. was the victim, the jury would likely have been influenced by his testimony. Because we cannot say beyond a reasonable doubt that the trial court's improper denial of Carlos's request to call F. as a witness did not contribute to the verdicts, we conclude the error was not harmless.

## Conclusion

¶ 27 Having concluded that the trial court committed reversible error when it denied Carlos his Sixth Amendment right to call F. as a witness without first determining that F. would not testify or otherwise cooperate as a witness, we now turn to the question of remedy. Merely remanding this case to the trial court to conduct a fact-finding inquiry on whether F. would cooperate on retrial is an unsatisfactory course of action unless there is the concomitant remedy of a new trial. If our granting of a retrial were to be dependent on F.'s answers at a hearing held as a condition precedent to the granting of a new trial, F. might be inclined to answer in the negative when asked if he intended to cooperate, so as to ensure that Carlos remained in prison. It is for this court, not an inmate victim, to determine the appropriate and meaningful remedy for the trial court's denial of Carlos's constitutional right to compulsory process. The appropriate remedy is to reverse Carlos's convictions and sentences and remand the case for a new trial.

CONCURRING: M. JAN FLÓREZ, Judge.

PELANDER, Judge, dissenting.

¶ 28 I respectfully dissent. The trial court did not abuse its discretion in precluding Carlos from calling F. as a witness because it had valid reasons for doing so. F. had made it abundantly clear during the first trial that not only would he be uncooperative and disrespectful, but he would also give no substantive, let alone potentially exculpatory, testimony. As noted in ¶ 3, the first trial ended in a mistrial. If the second trial had commenced three days or three weeks later, would the trial court have been required to call F. to the witness stand again, or even to summon him for a pretrial hearing, outside the jury's presence, in order to discern his intentions and level of cooperation? I think not. And, if that is so, why should the fact that three months had elapsed since F. had appeared before the court necessarily lead to a different conclusion, in the absence of any suggestion, let alone showing, that F.'s attitude or intentions had changed?

¶ 29 Neither Carlos nor the majority cites any authority supporting the proposition that a trial court violates a defendant's Sixth Amendment rights or otherwise abuses its discretion by precluding a witness from "testifying" under the circumstances presented here. Without question, a defendant generally has a Sixth Amendment right "to present his own witnesses to establish a defense," *Washington v. Texas*, 388 U.S. 14, 19, 87 S.Ct. 1920, 1923, 18 L.Ed.2d 1019, 1023 (1967), including the right to subpoena the victim as a witness to testify at trial. *State v. Sorenson*, 152 Wis.2d 471, 449 N.W.2d 280, 287 (App.1989). Neither Washington nor Sorenson, however, involved a recalcitrant, uncooperative, and disrespectful witness who

clearly demonstrated in a prior trial that he would offer no substantive testimony whatsoever.[3]

¶ 30 Similarly, the Fifth Amendment cases to which the majority analogizes are distinguishable on that same basis and do not support its result. See *State v. McDaniel*, 136 Ariz. 188, 665 P.2d 70 (1983); *State v. Mills*, 196 Ariz. 269, 995 P.2d 705 (App.1999); *State v. Maldonado*, 181 Ariz. 208, 889 P.2d 1 (App.1994). Those cases do not even suggest, let alone hold, that a trial court must re-interrogate an uncooperative witness or, worse yet, permit him to appear before the jury at a second trial when that witness unabashedly had refused to give any substantive testimony at the first trial a short time before. Moreover, in the Fifth Amendment context, a trial court may properly preclude a witness who "legitimately refuse[s] to answer essentially all relevant questions."[4] *McDaniel*, 136 Ariz. at 194, 665 P.2d at 76. See also *State v. Corrales*, 138 Ariz. 583, 588–89, 676 P.2d 615, 620–21 (1983). And, as this court has stated: " 'The Sixth Amendment right to call a witness must be considered in light of its purpose, namely to produce testimony for the defendant. Calling a witness who will refuse to testify does not fulfill the purpose....' " *Mills*, 196 Ariz. 269, ¶ 31, 995 P.2d 705, ¶ 31, quoting *United States v. Roberts*, 503 F.2d 598, 600 (9th Cir .1974) (citations omitted in *Mills*).

¶ 31 In upholding the quashing of a subpoena in *Mills* on Fifth Amendment grounds, we essentially deferred to the trial court's "reasonable speculation based on the court's knowledge of the case." 196 Ariz. 269, ¶ 34, 995 P.2d 705, ¶ 34. Similarly, the trial court's preclusion order was based on its "reasonable speculation" that F. again would be uncooperative and offer no material testimony. *Id.* The record does not reflect, nor does Carlos suggest, that any intervening change in circumstances had occurred between the two trials or that F.'s attitude, intentions, lack of cooperation, or behavior would have been any different in September 1999 than in June. The Sixth Amendment affords no right to call a witness who in all likelihood will refuse to testify. *Id.* at ¶ 31, 995 P.2d at ¶ 31.

¶ 32 It is also worth noting that the trial court ruled on August 5, 1999, that Carlos could not call F. as a witness unless defense counsel could first establish that he would cooperate. The second trial did not commence until September 21. Although defense counsel stated at that time that F. had refused to meet with or be interviewed by her, counsel did not specify what steps she had taken, if any, between August 5 and September 21 to interview or depose F. For example, the record does not reflect that Carlos ever moved to depose F. pursuant to Rule 15.3(a)(2), Ariz.R.Crim.P., 16A A.R.S. See *Stapleford v. Houghton*, 185 Ariz. 560, 917 P.2d 703 (1996) (inmate/victim in custody has no right to refuse interview by defense). Although Carlos had sufficient time and opportunity to attempt to show that F. would cooperate and substantively testify, he failed to do so. In view of that failure, the trial court did not abuse its discretion in precluding Carlos from calling F.

¶ 33 Nor did the trial court err in placing that burden on Carlos, as the majority concludes. See ¶¶ 12, 16, 17, 20. Although *United States v. Valenzuela–Bernal*, 458 U.S. 858, 102 S.Ct. 3440, 73 L.Ed.2d 1193 (1982), is factually distinguishable, its principles are now well settled and fully applicable here. In order to establish a Sixth Amendment violation, a defendant "must at least make some plausible showing of how [a proffered witness's] testimony would have been both

---

3. Uncontroverted evidence at trial established that F. had refused to give an interview or otherwise cooperate with prison officials who had investigated the subject incident. According to one investigator, inmate victims generally refuse to provide information for fear of being labeled a prison "snitch."

4. F.'s refusal to testify was not based on the Fifth Amendment privilege or any other valid ground. Nonetheless, as the state correctly points out and as the trial court noted, the power to hold F. in contempt "would prove fruitless, given the fact that [he] was serving life imprisonment." See *State v. Corrales*, 138 Ariz. 583, 589 n. 5, 676 P.2d 615, 621 n. 5 (1983) (threatening contempt against witness who refused to testify "was a dubious hope at best, considering the fact that the witness had already been convicted of first degree murder and sentenced to life imprisonment").

material and favorable to his defense ." *Id.* at 867, 102 S.Ct. at 3442, 73 L.Ed.2d at 1202.[5] And, courts have upheld that requirement in cases such as this, in which no illegal alien witnesses or countervailing governmental issues such as deportation are involved. See, e.g., *Selam v. Warm Springs Tribal Correctional Facility*, 134 F.3d 948, 952 (9th Cir. 1998); *United States v. Mejia–Uribe*, 75 F.3d 395, 399 (8th Cir.1996); *Howard v. Commonwealth*, 6 Va.App. 132, 367 S.E.2d 527, 534–35 (1988).

¶ 34 The majority's statement that Carlos was only required to show that F.'s testimony, theoretically, would have been relevant and material to the defense begs the question. ¶ 16. In order to obtain reversal under the circumstances presented here, a defendant must show that a proffered witness actually can and will give such testimony. Because Carlos made no such showing, the abstract, hypothetical notion that F.'s testimony, if forthcoming, would be relevant and material is of no moment.

¶ 35 The majority's effort to avoid the *Valenzuela–Bernal* requirement by distinguishing victims from other proffered witnesses also is unavailing.[6] ¶ 14. Indeed, absent Fifth Amendment considerations or plea bargain arrangements, an accomplice or other alleged perpetrator of the charged offense would be more likely than a victim to give testimony that is favorable and material to the defense. In any event, the showing required by *Valenzuela–Bernal* and its progeny applies to those parties who seek to have victims as well as other witnesses testify at trial. See *State v. Salazar*, 289 N.W.2d 753, 754 (Minn.1980) (state's failure to locate and call victim as witness did not deprive defendant of fair trial, in part, because there was "no reason to believe that the victim's testimony would have been favorable to defendant"); *State v. LaTender*, 86 Wis.2d 410, 273 N.W.2d 260, 271 (1979) (failure of one

victim to appear and testify at trial, despite having been subpoenaed, did not violate defendant's Sixth Amendment rights); cf. *Cacoperdo v. Demosthenes*, 37 F.3d 504, 509 (9th Cir.1994) (no Sixth Amendment or due process violation resulted from defendant's inability to interview victim/witness before trial, when defendant failed to show that "additional material and favorable evidence was available or even sought" from victim); *People v. Habersham*, 162 A.D.2d 370, 557 N.Y.S.2d 36, 36 (1990) (trial court's refusal to allow defendant to call victim at pretrial hearing did not violate Sixth Amendment rights when defendant failed to show victim's testimony would have supported his claim that identification procedures were unduly suggestive).

¶ 36 Carlos's underlying motivation behind this claim of error is obvious. He wants to call F. as a witness not because of any testimony he may give, but rather because Carlos understandably, and probably accurately, expects F. to act out again on the witness stand, prejudicing the jury and enhancing his chances of a mistrial or acquittal. Indeed, Carlos expressly argues that if F. had "persisted in not wanting to testify then the jurors would have known this first hand and could have deliberated with this information." In addition, Carlos's pretrial motion to which the majority refers, ¶ 4, clearly revealed that he primarily sought to impeach F. with his prior felony convictions and expressly noted that F. would be "a hostile witness." Those are not valid grounds for calling a witness, victim or otherwise, and do not justify a reversal and new trial here. See *United States v. Raineri*, 670 F.2d 702, 713 (7th Cir.1982); cf. *Commonwealth v. McAfee*, 430 Mass. 483, 722 N.E.2d 1, 8 (1999); *State v. Jackson*, 30 Or.App. 843, 568 P.2d 697, 698 (1977).

---

**5.** Arizona courts have recognized and applied that principle in the Fifth Amendment context. See *State v. Henry*, 176 Ariz. 569, 581, 863 P.2d 861, 873 (1993) (upholding trial court's denial of defendant's request to call alleged perpetrator of crime as witness, because witness would have invoked Fifth Amendment privilege, when no material and favorable evidence was lost); *McDaniel*, 136 Ariz. at 194–95, 665 P.2d at 76–77

(to same effect); *Mills*, 196 Ariz. 269, ¶ 31, 995 P.2d 705, ¶ 31 (defendant has right to compel attendance of witnesses whose testimony is both material and favorable to defense).

**6.** "There is no constitutional requirement that the victim of any crime testify." *State v. Boodry*, 96 Ariz. 259, 265, 394 P.2d 196, 200 (1964).

¶ 37 For all of these reasons, I would affirm. Alternatively, however, the most this court should do is remand for a hearing to determine whether F., in fact, would now cooperate and offer some material testimony. If so, I would agree that a new trial is in order. But if not, Carlos's convictions should stand. The majority's rationale for rejecting that procedure is questionable. ¶ 27. If in fact F.'s motivation for not cooperating or testifying is to assure Carlos's continued imprisonment (rather than the more likely explanation of not wanting to be a prison "snitch"), F. presumably would inculpate, not exculpate, Carlos if F. were to actually testify.

¶ 38 Finally, although the majority concludes that reversal and a new trial are required here, the scope of its holding should not be misconstrued. On remand, the trial court should determine in a hearing outside the presence of the jury whether F. will cooperate and offer any substantive, material testimony. If so, obviously Carlos is entitled to present that testimony to the jury in the new trial. But if F.'s attitude and lack of cooperation are unchanged, as everybody suspects will be the case, then the trial court should preclude F.'s appearance before the jury and would safely do so without violating any of Carlos's rights. *See Henry; McDaniel; Mills.* Although the majority implicitly approves of this procedure, see ¶¶ 10, 21, 22, 27, it should expressly do so in order to avoid any confusion on remand.