NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

STATE OF ARIZONA, *Appellee,*

*v.*

PAUL PATRICK WAYNE CLOW, *Appellant.*

No. 1 CA-CR 16-0033
FILED 3-14-2017

---

Appeal from the Superior Court in Yavapai County
No.  P1300CR201401153
The Honorable Tina R. Ainley, Judge

**AFFIRMED**

---

COUNSEL

Arizona Attorney General's Office, Phoenix
By Eric Knobloch
*Counsel for Appellee*

Yavapai County Public Defender's Office, Prescott
By Nicole S. Murray, Michelle DeWaelsche, John Napper
*Counsel for Appellant*

---

## MEMORANDUM DECISION

Judge Jennifer B. Campbell[1] delivered the decision of the Court, in which Presiding Judge Samuel A. Thumma and Judge Margaret H. Downie joined.

---

**C A M P B E L L**, Judge:

**¶1**  Paul Patrick Wayne Clow appeals his conviction and sentence for continuous sexual abuse of a child, a class 2 felony. *See* Ariz. Rev. Stat. ("A.R.S.") § 13-1417 (2010).[2]  For the following reasons and those expressed in a separate opinion, we affirm.[3]

### FACTS AND PROCEDURAL BACKGROUND[4]

**¶2**  In July 2014, Clow placed an ad to rent out two rooms of his house. The ad specifically stated that the space would accommodate a single-parent family. The victim's mother ("Mother") was the first person to respond to the ad, and she and her three sons, T.F. (age 10), J.F. (age 7 – the victim), and A.F. (age 5), moved in on August 2, 2014. Because Mother did not have rent money at the time of move-in, Clow agreed that Mother could pay rent as soon as she was able.

---

[1]The Honorable Jennifer B. Campbell, Judge of the Arizona Superior Court, has been authorized to sit in this matter pursuant to Article VI, Section 3 of the Arizona Constitution.

[2]Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

[3]In a separate Opinion, *State v. Clow*, 1 CA-CR 16-0033 (Ariz. App. May 14, 2017), filed simultaneously with this memorandum decision we reject Clow's remaining arguments. *See* Ariz. R. Sup. Ct. 111; Ariz. R. Crim. P. 31.26.

[4]We view the facts in the light most favorable to sustaining the verdict. *State v. Payne*, 233 Ariz. 484, 509, ¶ 93, 314 P.3d 1239, 1264 (2013).

¶3        Mother testified at trial that within a "couple [of] days," she began a sexual relationship with Clow, and Clow let the rent "slide." Clow also immediately became involved with the children, taking them to parks, stores, and other outings. Clow also supervised the children while Mother interviewed for jobs. By the end of August, Clow regularly participated in the children's bath and bedtime routines, including lying down with the children and "rub[bing] their back[s] [to] help them to fall asleep."

¶4        One night in early November, Mother was attempting to put the children to bed when the victim stated he was going to sleep with Clow. Mother told the victim "boys don't sleep in men's beds; that's not right," and put the victim to bed in his own room. A half hour later, Clow "barg[ed]" into Mother's room and then immediately left, "slam[ming] the door." Unsure what triggered Clow's outburst, Mother went into Clow's room, and he angrily said, "You just called me a[] [expletive] pervert."

¶5        Based on this incident, as well as the "special attention" and gifts Clow gave the victim, Mother suspected that something was "wrong." On November 9, 2014, while driving in the car with the children, Mother asked the victim whether Clow had ever told him "to keep secrets from mommy." The victim answered "yes." When Mother asked what type of secrets, the victim answered that Clow had told him how to have sex. At that point, Mother stopped the car and spoke with the victim outside the presence of the other children. Mother asked the victim whether Clow had touched him inappropriately and the victim stated that Clow had touched his penis both over and under his clothing.

¶6        Mother immediately contacted the police. Officer J.W. responded to Mother's request for assistance and found Mother at the side of the road, "completely upset, out of control," and unable to convey "the problem." After speaking with Mother for a few minutes, Officer J.W. understood that she believed one of the boys had been molested, and they went to a nearby police station. At the station, Officer J.W. again attempted to calm Mother and took her initial statement.

¶7        The next day, Detective P.E. conducted a forensic interview of the victim. In response to questioning, the victim said Clow had touched his "private part" and pointed to his genitals. When asked about the frequency of the touching, the victim said Clow either touched the victim's penis or rubbed his own erect penis against the victim "every day." At Detective P.E.'s request, the victim drew several pictures showing where Clow kept condoms and a "fake" penis in his bedroom and Clow's conduct

that the victim had seen. The victim told Detective P.E. that he really liked Clow "until this happened."

¶8          Detective P.E. then drafted a search warrant for Clow's house. The next morning, Detective W.P. conducted the search of Clow's house, seizing condoms, lubricants, and "finger cots," which "resemble[d] small condoms." To ensure that the officers seized all relevant evidence, Detective W.P. then invited the victim to participate in the search and identify any other items relating to the sexual conduct. The victim opened Clow's dresser drawers looking for what he referred to as a "treasure chest" where he had seen items that had already been collected by law enforcement.

¶9          The State charged Clow with one count of continuous sexual abuse of a child. At trial, the victim testified that Clow repeatedly touched and rubbed his penis and did so "about 24 times." During follow-up questioning, the victim clarified that he was unsure of the exact number of times, but knew it happened "a lot." The victim testified that Clow touched his penis every day until Mother reported the touching to the police. At the close of the State's case in chief, Clow unsuccessfully moved for a judgment of acquittal, claiming the evidence was insufficient to show that he sexually abused the victim for three or more months, a statutory requirement for the charged offense. *See* A.R.S. § 13-1417(A); Ariz. R. Crim. P. 20. Clow, who elected to testify on his own behalf, testified that he was only alone with the victim on one occasion during the entire period the victim's family lived in his house. Although he acknowledged the victim was the easiest child "to relate to" and he spent a significant amount of time with the victim, Clow denied inappropriately touching the victim.

¶10          After a five-day trial, the jury convicted Clow as charged. The court sentenced Clow to a term of twenty-five years' flat time in prison, an aggravated sentence. Clow timely appealed. We have jurisdiction pursuant to A.R.S. § 12-120.21(A)(1) (2016), A.R.S. §§ 13-4031 (2010), -4033(A)(1) (2010).

**DISCUSSION**

¶11          Clow argues the trial court erred by permitting the State to introduce inadmissible hearsay. Specifically, Clow challenges Detective W.P.'s testimony recounting his conversation with the victim during the search of Clow's home and Detective P.E.'s testimony summarizing the victim's forensic interview.  At times, Clow's counsel made timely hearsay objections to such testimony, and at times, he did not. We generally review a trial court's decision whether to allow witness testimony for an abuse of

discretion. *State v. Carlos*, 199 Ariz. 273, 277, ¶ 10, 17 P.3d 118, 122 (App. 2001) (citation omitted). To the extent Clow failed to object, however, we review solely for fundamental, prejudicial error. *State v. Lopez*, 217 Ariz. 433, 435, ¶ 4, 175 P.3d 682, 684 (App. 2008) (citations omitted).

**¶12** Detective W.P. testified on direct examination, without objection, that the victim made various statements regarding the location of condoms and a "fake" penis when the detective invited him to help with the search. Defense counsel likewise elicited testimony regarding the victim's statements to Detective W.P. The State contends that the victim's statements to Detective W.P. regarding the location of condoms and a "fake" penis, introduced through the detective's testimony, were non-hearsay because the statements were not offered to prove the truth of the matter asserted, but to demonstrate the effect the victim's statements had on the police officers. Because the only relevance of the statements was to bolster the victim's testimony Detective W.P.'s testimony was, therefore, hearsay.

**¶13** In this case, however, the victim testified on direct examination that he had shown the detectives the location of certain sexual items in Clow's bedroom. Accordingly, the detective's testimony, although hearsay to which a timely objection properly may have been sustained, was merely cumulative. Thus, Clow has failed to demonstrate prejudice for purposes of fundamental error. *See State v. Henderson*, 210 Ariz. 561, 567, ¶ 20, 115 P.3d 601, 607 (2005) (under fundamental error review, error must be of a magnitude that the defendant could not receive have received a fair trial) (citation omitted).

**¶14** Detective P.E. testified in detail, and without objection, about various aspects of the victim's statements, repeatedly referring to the forensic interview transcript to refresh her recollection. Over objection, Detective P.E. also testified that the victim explained how Clow touched his penis manually both over and under his clothing. On cross-examination, defense counsel elicited testimony that the victim stated he believed Clow would go to jail and knew Clow molested him twenty-four times because he could "just remember."

**¶15** The State also asserts Detective P.E.'s testimony, relaying the victim's forensic interview statements, was admissible under the residual hearsay exception. *See* Ariz. R. Evid. 807. Although the State argues Detective P.E.'s testimony was more probative on the nature of the sexual abuse than the victim's testimony, *see* Ariz. R. Evid. 807(a)(3), the record does not substantiate this argument. Nor does the record reflect that the

victim "was having trouble remembering" the sexual abuse. On this record, there is no basis to conclude that Detective P.E.'s testimony was more probative regarding the sexual abuse than the victim's testimony.

¶16            Given the victim's testimony, however, this portion of Detective P.E.'s testimony was improper, but cumulative. Stated differently, all the salient evidence presented through Detective P.E.'s testimony was first introduced through the victim's own testimony, and he was subjected to thorough cross-examination. *See State v. Hoskins*, 199 Ariz. 127, 144, ¶ 66, 14 P.3d 997, 1014 (2000) (admission of improper testimony by detective regarding witness's statements constituted harmless error when statements were also included in witness's own testimony and witness was subjected to thorough cross-examination) (citation omitted). We conclude beyond a reasonable doubt that the statements admitted over objection did not contribute to or affect the verdict or sentence in this matter. *Henderson*, 210 Ariz. at 567, ¶ 18, 115 P.3d at 607. Nor has Clow shown that the testimony admitted, without objection, was prejudicial under a fundamental error review. *Id*. at 567-68, ¶¶19-20, 115 P.3d at 607-08.

## CONCLUSION

¶17            Clow's conviction and sentence are affirmed.



AMY M. WOOD • Clerk of the Court
FILED:  AA